## EDWARDS *v.* RANDLE.

Opinion delivered December 19, 1896.

CONTRACT—PUBLIC POLICY—SALE OF OFFICE.—A contract for the sale of the fixtures of a post office, in which the vendor, who was the postmaster, agreed to resign his office and recommend the appointment of the vendee as his successor, is void as against public policy, and money paid under such a contract cannot be recovered, on the refusal of the vendor to perform.

Appeal from Clark Circuit Court.

RUFUS D. HEARN, Judge.

*John E. Bradley* for appellant.

This suit is founded on an illegal contract, which can neither be enforced in law or equity, and all the parties are *in pari delicto*, and the courts will leave them where they have placed themselves. Lawson, Cont. secs. 310, 311; 32 Vt. 721, 546; Lawson, Cont. secs. 314, 315; 2 Parsons, Cont. (3 Ed.), p. 253; 47 Am. Dec. 422; 33 Am. Rep. 548; 47 Ark. 378; 48 *id.* 490; 31 Am. Dec. 599; 34 *id.* 712; 32 *id.* 348.

BUNN, C. J. The appellee, Randle, sued the appellant, Edwards, in the Clark circuit court for the sum of two hundred dollars, money paid him on a contract of purchase and sale. Judgment for plaintiff for said sum and interest, and defendant appealed.

It is shown in evidence that on or about the first day of December, 1892, the appellant, who was then postmaster at Gurdon, bargained and sold to appellee, to be delivered on the first of January following, for the said sum of two hundred dollars, his post office cabinet, fixtures, and the counters and shelving, agreeing at the time, as a part of the transaction, to resign his office and recommend appellee as his successor, which he then

and there did; also to appoint Ben Cable his deputy, and to permit appellee to receive all the fees and emoluments of the office, as he says, from the time of appellee's appointment until his installation in office, but, as appellee says, from January first until he should become postmaster. The two hundred dollars were paid when the bargain was made. On the first of January aforesaid, appellee demanded a delivery of the articles sold, and in a few days afterwards the demand was renewed, and both times refused to be complied with by appellant, for the reason, as he states, that he was not permitted to remove the post office from his to appellee's store without authority from the post office department, and that the delivery sought and demanded by appellee was, in fact and in truth, a demand to make such removal. Upon the refusal of appellant to comply with the demands of appellee, he then demanded a recission of the contract of sale, on which also being refused by appellant he instituted this suit for the recovery of the money he had paid as stated, and lawful interest thereon. The defendant answered, averring that he had fully complied with his contract as far as it was possible for him to do, and was still ready and willing to do whetever he had contracted to do, if he could do so.

There is something of a controversy as to when Cable should be appointed deputy, and when appellee should begin to enjoy the fees and emoluments of the office; also, as to whether the counters and shelves were part of the consideration of the purchase, or a mere gift. Otherwise, there is no substantial controversy as to the facts.

The transaction, taken altogether, plainly shows that the sale and purchase of the office of postmaster was the main thing, and the cabinet furniture, fixtures, counters, and shelves were mere conveniencies, of little

or no value to any one except he were postmaster. In fact, this is in effect admitted. Whether Cable should have been appointed deputy at once by appellant, or not until appellee's appointment should be assured, we cannot say, and that really depends upon another fact, that is, when the appellee should begin to enjoy the fees, for the appointment of Cable seems to have had some connection with that. It is reasonable to suppose that the fees should begin to be paid to appellee whenever his appointment should be assured, and not before, as stated by appellant. Be this as it may, the contract seems to have been an executed one, so far as anything the parties could do in the premises. Enough is shown, at all events, to convince the reasonable mind that the desire to rescind on the part of the appellee did not spring from any sentiment of repentance, but rather because of a failure, present or prospective, to obtain the object of his desires,—the office.

The contract, as explained by the pleadings and testimony, is an indivisible one; that is to say, the lawful and the unlawful parts cannot be separated, so as to enforce the one and annul the other. Looking at the transaction in the most favorable light, it is in contravention of public policy, simply because it is an effort to create a vacancy in a public office, and to fill that vacancy by and through methods that the law cannot tolerate. The contract is therefore null and void throughout.

In *Edgerton* v. *Earl Brownlow*, 4 H. L. Cas., 1-256 (which is the leading English case on the subject), is to be found a most elaborate discussion of the subject by the English circuit judges and the jurists of the house of lords, and from the language of one of these in that case, Greenhood, in his work on Public Policy, p. 2, makes this statement, viz.: "By 'public policy' is intended that principle of the law which holds that

no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be termed the policy of the law, or public policy in relation to the administration of the law," and continuing said: "The strength of any contract lies in the power of the promisee to appeal to the courts of public justice for redress for its violation. The administration of justice is maintained at the public expense; the courts will never, therefore, recognize any transaction which, in its object, operation, or tendency, is calculated to be prejudicial to the public welfare." We need not adopt this language in all its scope and bearing, for, as said by another, the rules of public policy must not be extended, for it is always to be kept in mind that persons have a right, *prima facie*, to contract, and therefore the objection to their contracts that they contravene public policy should be manifestly against the public good.

In *Filson* v. *Himes*, 5 Pa. St. 452, also reported in 47 Am. Dec. 422, it was held that "a promise to secure the removal of a post office and the appointment of one as postmaster is illegal, on the ground of public policy, and a contract founded on such promise is void." And further: "If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void." Except as to the resignation of the incumbent, that case was very much like the one at bar. For a list of cases on the subject see *Clippinger* v. *Hepbaugh*, 40 Am. Dec. 519, notes.

As to whether money paid on an illegal contract will, in any case, be the subject of recovery, and if so, in what cases, see the case of *Pickett* v. *School District No. 1*, 25 Wis. 551, where it was said by one of the judges (all agreeing, it seems): "Still, there seems ground for a distinction between contracts which are held to be against public policy, merely on account of

the personal relations of the contractor to the other parties in interest, and those which are void because the thing contracted for is itself against public policy. In the latter class, the parties acquire no rights which can be enforced either in the courts of law or equity; but in the former, the thing contracted for being in itself lawful and beneficial, it would seem unjust to allow the party who may be entitled to avoid it to accept and retain the benefit without compensation at all. And it is accordingly held, in all those cases where agents or trustees empowered to sell attempt to purchase for their own benefit, not that the sales are absolutely void and pass no title, but that they may be avoided by the principal, who may have set them aside in equity. (Story, Agency, note 2, page 246)." "In such cases the trustee or agent, if the sale or contract were avoided, would get his money back. The principal could not take the money and avoid the sale also." See also *Wiggins Ferry Co.* v. *Chicago & A. R. Co.* 73 Mo. 389.

It is sufficient to say that the case at bar is one in which the contract is not void nor alleged to be void on account of any peculiar relation which the parties to it occupy one to the other, but because the subject-matter of the contract, the thing itself contracted for, the disposition of the post office and the incumbency attempted, is void. This court cannot lend its aid to either party in respect to any claim or thing involved in such a contract.

The judgment is reversed, and the cause dismissed.