## Lewis's Estate.

*Executors and administrators—Agreement to relinquish administration.*

An agreement made in consideration of a relinquishment of a right to administer is against public policy, and unenforceable.

Where a widow entitled to the whole of the income of her husband's estate, assigns a portion of it to a son " as a gift," and there is no consideration for it other than a renunciation on the part of the son of the right to administer, the assignment as to future income may be revoked.

Argued Oct. 10, 1902.  Appeal, No. 63, Oct. T., 1902, by William Lewis, Jr., from decree of O. C. Phila. Co., April T., 1885, No. 306, dismissing exceptions to adjudication in estate of William Lewis, deceased.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.  Affirmed.

Exceptions to adjudication.

The auditing judge, ASHMAN, J., found the facts to be as follows :

The main question at issue is the right of Catherine Lewis, the wife of William Lewis, to share as his assignee, in the income ; a right which, if it exists at all, is derived from the agreement of February 21, 1895, between the widow and the children.  This agreement, which was under seal, after reciting that certain differences had arisen respecting the conduct of the estate, stipulated that the widow should receive $2,000 yearly out of the estate, and that the net balance of income should be divided equally among the four children, with the proviso that the shares so allotted to the children were to be received by the latter as a gift from the mother, and were not to be liable to anticipation or alienation, or for the debts, contracts or engagements of the said children, nor to attachment

394      LEWIS'S ESTATE.

Statement of Facts—Opinion of Court below. [21 Pa. Superior Ct.

at the suit of creditors. It further provided that "should any creditor of the said children proceed by legal process to sell the interest of said children or any of them in the said estate of William Lewis, deceased, or should their or either of their interests be attached or bought out, the share of income herein provided for such child or children shall immediately cease and determine, and be distributed in a manner as provided in the event of the death of the said children in the lifetime of the said Annie Lewis." By the third clause, William Lewis, the son, "in consideration of the premises," agreed to resign his office of executor and trustee.

Prior thereto, on December 20, 1893, the said William Lewis had assigned all his interest in the decedent's estate to his wife, Catherine A. Lewis ; whether purposely concealed from them or not, this fact was unknown to the other parties in interest, and the widow testified that she would not have executed the agreement if she had been informed of the assignment. The case is tainted with the suspicion of bad faith on the part of William Lewis in appearing as a party in interest to an agreement, when he had already assigned his interest. The assignment, if executed after, instead of before, the agreement of 1895, would not perhaps have violated that agreement. It was not an anticipation nor sale, and it created no liability for debts, contracts, engagements or attachments, but it was an alienation. It would, however, have been within the spirit of the agreement because it harmonized with the purpose of that instrument in preserving the income of the children free of their debts. The son, too, was not like the other children, a mere volunteer ; in accepting the benefits of the agreement, he relinquished his office as executor and trustee, and with it his right to commissions, and this was a valuable consideration. But the fact remains that at the date of the agreement he had no share in the estate, and his assignee could not claim a gift personal to the son given long after the assignment. The income which she now demands was not derived under the will, but under a gift made by the life tenant. The claim of Catherine A. Lewis is therefore rejected.

On exception PENROSE, J., filed the following opinion :
It is very clear that the assignment in 1893 of the interest

which the son of the testator then had in his estate (which had come to him under the father's will) did not, and could not, include an interest which he did not acquire until two years later under a gift from his mother. It is, indeed, shown affirmatively by the agreement between the mother and her children, which declares that "William Lewis, Jr.," that is, the son, himself, not his assignee, "is to receive one fourth of the net income . . . . after the deduction of the sum of two thousand dollars above referred to," and that "in case of the death of . . . . William Lewis, Jr., in the lifetime of the mother . . . . the income herein provided . . . . shall immediately cease and determine . . . . and shall be distributed equally among the children surviving" his death, if he had assigned his share, being obviously of no consequence. The assignment does not profess to pass future interests, still less to pass what was not even, at the time of its execution, an expectancy. There was, therefore, no error in refusing to award to the assignee—the wife of the assignor—any part of the balance of income shown by the account.

It is proper to say that we have not been furnished with a copy of the will, but the adjudication states that it gave the entire income of the estate to the testator's widow, who is still living, and the principal, at her death, to his children.

It is equally clear that the condition in the family settlement or agreement, in 1895, between Mrs. Lewis and her children, against future alienation, was not broken by the son's prior assignment, in 1893, of his interest in the estate, which, as already stated, was only the interest which he had under the father's will; but it by no means follows from this that he has the right under the agreement to demand a share of the income. The agreement is under seal, and its averments, which are to be accepted as true, are no less binding upon the children than they are upon the mother, who was relinquishing part of what the will gave her for life. It declares that "it is understood and agreed" that the income provided for the children is received from their mother "as a gift." It is of the essence of a gift that so long as it remains executory it is revocable, and here all the parties but the son have consented that it shall be revoked. But there is much more than this—the son was one of the trustees appointed by the will to protect the interests of all the

beneficiaries, of whom the mother, having a life interest in the entire income, was the chief object of the testator's bounty. She also was a trustee, but, as it appears, took no part in the active management of the estate, and so far as the income was concerned she was the sole cestui que trust. If, therefore, the agreement is to be regarded in the light of a conveyance and not as a mere revokable gift, it is a conveyance by a cestui que trust to the trustee—not absolutely void on that account but voidable unless supported by an adequate consideration and executed with the fullest disclosure of all the facts and with the most absolute candor and good faith on the part of the trustee. The agreement itself shows that the fact that the son had previously assigned his interest in his father's estate was not known by the mother; for it provides that "should any creditor of the said children proceed by legal process to sell the interest of said children or any of them in the said estate of William Lewis, or should their or either of their interests be attached or bought out," the share or income provided for such child shall cease and the whole income go to the others. Moreover, the mother swears positively that she did not know of the assignment, and that she would not have executed the agreement if she had. The son does not venture to contradict this, and the fact, therefore, that their mutual counsel had knowledge becomes immaterial. The hands of claimants in a court of equity must be clean, especially where the claim is by a trustee against a cestui que trust.

The exceptions are dismissed, and the balance of income awarded to the widow of the testator, the other parties to the family settlement, except the son, having agreed that the gift shall be revoked.

*Errors assigned* were in dismissing exceptions to adjudication.

*Reynolds D. Brown*, with him *George S. Schaeffer*, *Malcolm Lloyd, Jr.*, and *Charles H. Burr, Jr.*, for appellant.

*L. Melick*, of *Melick, Potter & Dechert*, for appellee.

OPINION BY WILLIAM W. PORTER, J., November 19, 1902:
The opinion of Judge PENROSE in dismissing the exceptions

filed by William Lewis, Jr., in the court below contains sound reasons for the rejection of the claim. It, however, does not notice one argument presented for our consideration. It is urged that the relinquishment by William Lewis, Jr., of his office of executor operated as a consideration for the agreement of his mother to release to him a part of the income of the estate, to all of which she was entitled for life under the terms of the decedent's will. Two answers are manifest. First, the parties specifically agreed that the act of the mother should be regarded as a gift. Inherent in the giver, in such case, is the right of revocation. Second, an agreement made in consideration of a relinquishment of a right to administer is against public policy, and unenforceable. See Bowers v. Bowers, 26 Pa. 74.

The decree of the court below is affirmed.