JANE AUGHEY v. JAMES H. WINDREM and E. A. DOTY, Appellants.

**Conspiracy:** EVIDENCE. In an action to recover money paid on a contract alleged to have been procured from plaintiff through the conspiracy of defendants, the evidence as to whether one of the defendants actively participated in the illegal scheme, so as to render him liable as a conspirator, is held sufficient to take the issue to the jury.

**Contracts:** REAL PROPERTY: FRAUD: RECOVERY OF CONSIDERATION: PLEADINGS. Where the plaintiff in an action to recover money paid on an illegal contract for the purchase of property, pleads and proves a retention of part of the money by one defendant as a commission, without her knowledge and while acting as her agent in the purchase of the property, a recovery therefor may be had even though an alleged conspiracy to procure the contract is not proven.

**Same:** ILLEGAL CONTRACTS: PUBLIC POLICY. A contract to resign a position of trust or to procure the appointment of another is void as against public policy; so that, where defendants conspired to induce plaintiff to purchase certain property from one of them by his agreement to resign the guardianship of plaintiff's nephew and to recommend her appointment, the contract was illegal, and it was unnecessary to prove that she was induced to pay an exorbitant price for the property, to recover that portion of the purchase price already paid.

**Same.** A party to an illegal executory contract for the purchase of land may repent and sue for the return of that portion of the purchase price already paid, although having knowingly and voluntarily entered into the agreement; and the fact that public announcement was made of abandonment of the illegal

enterprise before notice to the other party is immaterial, save as it might bear on the sincerity of the repentance.

**Conspiracy:** CIVIL LIABILITY. Where the defendants wrongfully conspired to induce plaintiff to enter into an illegal contract it is immaterial, in an action to recover money paid thereon, which one actually influenced the making.

**Conspiracy:** EVIDENCE: RESTRICTION TO SPECIAL PURPOSE. Where evidence is competent as against one of several defendants it should not be excluded because not applicable to all, but upon request may be so limited.

**Evidence:** FAILURE TO OBJECT. A party cannot permit evidence to be received without objection and then complain of the courts refusal to strike it out.

*Appeal from Johnson District Court.*— HON. O. A. BYINGTON, Judge.

SATURDAY, FEBRUARY 15, 1908.

ACTION for recovery of money paid on contract resulted in a verdict and judgment for the plaintiff. The defendants appeal.—*Affirmed.*

*Milton Remley* and *Geo. F. Remley,* for appellants.

*John J. Ney* and *Holbert & Holbert,* for appellee.

LADD, C. J.— After the death of the mother of Chris. Quinn, a person of unsound mind, the defendant Windrem was appointed guardian of his property, a part of which was a farm of one hundred and sixty acres in Calhoun county. This was in 1903, and shortly thereafter the guardian applied for an order of court authorizing the sale of this farm. The plaintiff, a sister of the ward's mother, resisted such application, and in August, 1904, sought to have the guardian removed. This was refused, and the order of sale entered as prayed. In October, 1905, having heard of the guardian's efforts to sell, she telegraphed the defendant Doty to " ask Windrem would he take the commission from me, and not sell Christie's home. This will

deal him the last blow." A few days later Doty answered by letter that the farm was not sold, and that Windrem had promised not to close the bargain until Doty could hear from her, and, further:

Now, I have a promise from him that if he could sell his property that he now lives in for twenty-five hundred dollars, he would resign the administratorship and guardianship and leave Oxford. This property he offers for sale will rent for twenty dollars a month for a restaurant and hotel, so you can see it would not be a bad investment, and then you could without further cost, get the management of " Christie's " property into your own hands, which I have always thought would be the correct thing. Windrem says that he would not need all the money down — about $1,000, the balance could stand at 6 per cent. interest if you wished. He seems to be anxious to get away this winter. I wish you would let me hear from you at once, and if you think favorable of the matter come out, and I will do what I can to help you in this matter.

To this she responded that she would start for Oxford, Iowa, the next day, and arrived there Nov. 1, 1905. After lunch she went directly to Doty's office, and asked him to learn of Windrem about the purchase of the place for her. He did so, and reported that she could buy it at $2,500, and that Windrem would prepare the papers. She then borrowed $500 and gave it to Doty, who handed her the following writings:

Received of Miss Jane Aughey five hundred dollars in consideration of which I hereby agree to sell to said Jane Aughey my hotel building and lot (6) six, block (6) six, in the town of Oxford, Iowa, for the sum of two thousand and five hundred ($2,500), said party to pay $1,000 at time of deed is made of which above $500 is part. Said Jane Aughey to give mortgage for fifteen hundred dollars due on or before two years from date at 6 per cent. interest from date. (Signed) Jas. H. Windrem.

I hereby agree to resign my guardianship of Christo-

pher Quinn, a person of unsound mind, at once, and use my influence to secure the appointment of Jane Aughey, or any person who she may select.    Jas. H. Windrem.

According to the testimony of defendants the last paper was procured from Windrem some minutes after the first had been delivered, and at plaintiff's request.    She then went to

1. CONSPIRACY: evidence.

Iowa City where she related to her counsel what had happened.    On the following day the matter was called to the attention of court, then in session, by plaintiff and counsel, and the guardian, either through removal or resignation, was relieved from further service in that capacity.    The plaintiff promptly repudiated the arrangement, and demanded the return of the money paid.    Windrem testified that the agreement to resign and exert his influence in behalf of plaintiff formed no part of the negotiations of sale, and was not taken into consideration; that nothing had been said about the matter previous to the payment of the money, but admitted he had received a letter from her asking if he would resign, and that when Doty advised him that plaintiff wanted such a paper a few minutes after the receipt for the money had been given he signed it without objection.    Doty testified that he had talked with Windrem several times prior to writing the letter to plaintiff, once shortly before, but had not spoken to him of the sale of his property, though he knew the price, and that he wished to leave, thus admitting that he had not told the truth in his letter.    Of the money received Doty kept $100 without the knowledge of plaintiff, for whom he was pretending to act, and turned $400 over to Windrem, who raised no objection to this arrangement.    It should be added that Doty had been the family physician of plaintiff's sister, with whom she had lived during the summers of many years prior to her (the sister's) death, and also he had treated the ward.    The circumstances leave little doubt but that she was acting upon the advice and influence of Doty, and that, even though it was not expressly so stated, that

Windrem understood the design in making the purchase. This alone would not be sufficient to charge him with a conspiracy in a case like this. But to do this it was not essential that he should have participated at the inception of the scheme which was hatched by Doty. If he subsequently adopted it, this was enough, and from his agreement to resign and to exert his influence in behalf of plaintiff as his successor so soon after the payment of the money and as a matter of course; and allowing Doty to increase his price and retain $100 of the amount paid, when he (Windrem) must have known he was acting for plaintiff, together with the price as compared with the value of the property — the jury might have found that he was actively participating in Doty's enterprise. The evidence then was sufficient to carry the case to the jury.

II. It was unnecessary to prove more than essential to entitle plaintiff to recover, and though conspiracy were alleged, if, aside from this, enough was stated in the petition to authorize recovery, the action would not be defeated because of the charge of conspiracy. See *Young v. Gormley*, 119 Iowa, 546.

2. CONTRACTS: real property: fraud: recovery of consideration: pleadings.

Even under the defendant's theory of the case Doty was liable for the $100 which he received without plaintiff's knowledge while acting for her. This was specifically alleged. And even though there was no conspiracy, yet, if the agreement of Windrem that he would resign and give his influence in favor of plaintiff as his successor was a part of the contract of purchase, as the jury might have found, plaintiff upon withdrawing from the arrangement had the right to be recouped for the money paid thereon.

But this cause was submitted to the jury on the theory that a finding of conspiracy was essential to recovery from either defendant, and this must be treated as the law of the case for the purposes of this appeal. The jury was told in the seventh instruction that, in order to recover, plaintiff " must establish that the defendants, knowing that she desired

the removal of Windrem from the guardianship of Chris Quinn, conspired ·and connived together to induce her to purchase the said property of Windrem in Oxford at an exorbitant price, by making as an inducement to said contract to purchase an agreement on the part of said Windrem that he would so resign, and by making such agreement to resign a moving consideration to induce plaintiff to purchase said property at said price, and that by reason of such conspiring and conniving in order to secure such removal the plaintiff was induced to, and did, purchase said property." The instruction closed with an admonition that, unless defendants so conspired and did induce the plaintiff to purchase said property in order to secure the removal of Windrem, the verdict should be for defendants.

This was more favorable to defendants than they were entitled to have it, for it was immaterial whether the price of the house was exorbitant or not. If a purchase was so induced at a fair valuation, the transaction

3. SAME: illegal contracts: public policy.

would have been none the less reprehensible from a·legal point of view, for, as aptly said by the trial court, " the office of guardian is not a matter of commerce," and " an agreement to resign was against public policy." The principle that a contract to resign a public office or to exert influence to secure the appointment of another is void as against public policy has been too long established to require the citation of authority for its support, but see cases collected in 9 Cyc. 494. *Edwards v. Randle,* 63 Ark. 318 (38 S. W. 343, 36 L. R. A. 174, 58 Am. St. Rep. 108) ; *Basket v. Moss,* 115 N. C. 448 (20 S. E. 733, 48 L. R. A. 842, 44 Am. St. Rep. 463). The guardian of a minor or lunatic is not a public officer, yet he is in the exercise of a trust quite as sacred. A trustee may not make use of his relations as such for personal emolument. An agreement for a valuable consideration to abandon the trust or to transfer it to another is void. He may voluntarily resign for reasons not mercenary in character, but has

no right to traffic in or make merchandise of the confidence reposed in him. In *Cunningham v. Cunningham*, 18 B. Mon. (Ky.) 24 (68 Am. Dec. 718), the court declined to enforce a contract by which a guardian resigned in favor of the grandfather of a minor in consideration of the grandfather's agreement to give the guardian a child's share of his estate. A contract of an executor to resign was held to be void in *Ellicot v. Chamberlin*, 38 N. J. Eq. 604 (48 Am. Rep. 327) and *Staunton v. Parker*, 19 Hun (N. Y.) 55, and the same ruling was applied to an administrator in *Porter v. Jones*, 52 Mo. 399. The authorities are in conflict as to whether a contract to relinquish the right merely to administration is void. See, *pro, Bowers v. Bowers*, 26 Pa. 74 (67 Am. Dec. 398), *contra, Bassett v. Miller*, 8 Md. 548. The invalidity of the agreement, if made, is not questioned, however, but it is argued that the attention of the jury was diverted from this feature of the case by the emphasis put on the disparity between the purchase price and real value. The criticism is unfounded. The jury might have inferred that exorbitancy of price was essential to recovery, of which appellants cannot complain, but the necessity of finding the existence of a conspiracy, and that plaintiff was induced to purchase by Windrem's promise to resign, and that this was a part of the agreement were clearly stated.

III. It will be observed that the agreements were entirely executory save the payment of the $500. One of the defenses interposed was that plaintiff was *in pari delicto*, and for this reason was not entitled to relief.

4. SAME. If it be conceded that she was knowingly and voluntarily participating in an unlawful enterprise she had the right to repent of her wrong at any time before consummation in whole or in part of the illegal agreement, and sue for the return of what she had advanced in aid of its execution. *Barnett v. Mendenhall*, 42 Iowa, 296; *Munns v. Donovan*, 117 Iowa, 516; *Stover v. Flower*, 120 Iowa, 514. Upon consulting a lawyer she immediately abandoned the

scheme. She made no use of the papers save to exhibit them to the court as proof of Windrem's unfitness to continue as guardian. That the object of the agreement was effected in a way other than contemplated may have raised doubt as to whether she had in fact repented. But the removal of the guardian was accomplished without any act of Windrem in pursuance of the unlawful promise on his part, and therefore the agreement has never gone any further than the payment by plaintiff. Had she notified Windrem of her withdrawal from the transaction prior to going before the judge and exhibiting the papers, and made use of them thereafter in the same way, her right to recover the money paid could not well be questioned. The fact that she went before him first can make no difference save to cast doubt on her sincerity, and put in question whether she in fact repented and withdrew from the illegal enterprise, or made use of the papers to accomplish her purpose with the design of withdrawing if she succeeded, and of carrying out the contract if she failed. In the latter event she could not be said to have repented. Nor could she be said to have done so if she entered into the scheme with the design of effectuating her object, as was finally done. These circumstances, however, bore directly on the issue of whether she had withdrawn from the transaction promptly, and this was submitted to the jury, though not with the particularity desirable. But the instruction given was correct in so far as it went, and had a more specific one been thought helpful it should have been requested.

IV. Appellants criticise the instruction to the effect that entering into the illegal contract would not bar a recovery if plaintiff, because of lack of experience, acted by virtue of the advice and influence of Doty therein. It is conceded that this would be a correct abstract statement of the law had it been applied to Windrem instead of Doty. See *Davidson v. Carter*, 55 Iowa, 117, 9 Cyc. 552. There was no occasion under the instructions to consider whether plaintiff was in a

5. CONSPIRACY: civil liability.

situation to recover until the jury should find the existence of a conspiracy, as alleged. If so found, then, as defendants were acting in concert, it was immaterial by which one she was influenced and controlled in entering into the arrangement.

V. In the course of the trial several items of evidence were admitted over the objection of one or the other of the defendants, but in no instance where the evidence should not

6. Conspiracy: evidence: restriction to special purpose.

have been received against one of them at least. The rulings were correct, and had counsel desired the consideration of the evidence limited to one of them he should have so requested. Thus, Doty's letter to plaintiff was admitted over Windrem's objection. It was properly received as explaining Doty's conduct and plaintiff's connection with the transaction. Had counsel desired that its consideration be so limited he should have requested an instruction to that effect. That requested, directed the exclusion from consideration of all declarations of Doty not in Windrem's presence. This was incorrect, for, after enough had been shown to warrant the finding of a conspiracy, the declarations of each in carrying out its purpose, wherever made, were the acts of both. See *State v. Crofford*, 133 Iowa, 478.

VI. Plaintiff, when a witness, was asked: "Dr. Doty was working for you, was he not?" An objection as incompetent was rightly sustained. The question called for a conclusion, and, under the circumstances, a difficult one to settle at that.

VII. Complaint is made of the ruling by which the court refused to strike from Ney's testimony what the judge had said concerning the discharge of the guardian. The rul-

7. Evidence: failure to object.

ing was discretionary, and will not be disturbed. A party cannot allow evidence to go in without objection, and then, if it does not suit him, complain because the court refuses to strike it out. *State v. Marshall*, 105 Iowa, 38.

VIII. Hearsay evidence as to the dissatisfaction of the ward was received, but this was without prejudice. The petition contained some surplusage which might well have been stricken on motion, but leaving it in could not have prejudiced the defendants. The ruling on the demurrer finds approval in what has been said, and the contention that the petition failed to state facts constituting conspiracy is without merit. Some other matters are suggested in argument, in connection with which we have discovered no error. The judgment is *affirmed*.