AMERICAN ACCIDENT AND LIFE INS. CO. ET AL
*v.* AMERICAN PIONEER LIFE INS. CO. ET AL

5-4954                                   445 S. W. 2d 896

Opinion delivered October 13, 1969

[Rehearing denied November 17, 1969]

*Rose, Meek, House, Barron, Nash & Williamson,* for appellants.

*Frierson, Walker & Snellgrove, Sam Montgomery*
and *Wright, Lindsey & Jennings,* for appellees.

CONLEY BYRD, Justice. This litigation questions the
validity of two exclusive agency contracts that were not
approved by the Insurance Commissioner as required
by Ark. Stat. Ann. § 66-4240 (Repl. 1966). It was com-
menced in the trial court by appellee American Pioneer
Insurance Company, against appellees Pioneer Under-
writers, Inc. and R. E. Phillips and Huey Duke for a
debt owed. Appellants American Accident and Life In-
surance Company and Investors Insurance Corporation
were brought into the action by garnishment on the al-
legation that they were indebted to Pioneer Underwrit-
ers, Inc., et al, for commissions due upon renewal premi-
ums received. Thereafter there were cross complaints
and counterclaims which put into issue the validity of
the exclusive agency contracts, the liability of appel-
lants upon quantum meruit and the assumed liability
of Investors Insurance Corporation.

After a trial on the merits, the trial court entered
judgment for 5% of the premiums received less credits
for payments received or monies retained. For reversal
appellants rely upon the following points:

> "I.  Appellees are not entitled to recover under
> unapproved contracts requiring prior ap-
> proval of the insurance commissioner.

> "II.  In such cases of contracts void by statute,
> to permit recovery by quantum meruit is
> against public policy.

> "III. Even were quantum meruit recovery permis-
> sible, appellees are entitled to nothing, and
> appellants are entitled to recover for refunds
> made on policies cancelled or unissued.

> "IV. There is no basis for any liability to appellees

by appellant Investors Insurance Corporation.''

The record shows that on August 22, 1963, the management of American Pioneer Insurance Corporation also controlled the management of First American Reserve Life Insurance Company and appellant American Accident & Life Ins. Company. On that date First American Reserve Life Ins. Co. entered into an exclusive agency contract with Pioneer Underwriters to write hospitalization insurance. By the terms of that contract Pioneer Underwriters were to receive all of the initial premium plus 15% of all renewals for a period of at least two years from the date of termination.

In July, 1964, the management determined that it would be more advantageous to place the better risk hospitalization policies into American Accident & Life Ins. Company. This was accomplished through a reinsurance agreement by which American Accident gave $27,000.00 in cash, assigned a $4,991.52 account owed by Hyneman Enterprises, Inc., and assumed the liabilities of First American Reserve to Pioneer Underwriters.

In the same month American Accident entered into a new contract with Pioneer Underwriters, by which American Accident promised Pioneer Underwriters an exclusive agency contract and to pay to them 15% of the initial premiums and 5% of the total annual renewal premium income.

On July 28, 1964, American Pioneer Life Insurance Company sold its 8,263 shares of capital stock in American Accident to Floyd Shellman and Byron Prugh. As part of the purchase agreement the purchasers agreed to assume the obligation owed by American Accident to Pioneer Underwriters. Shellman and Prugh later assigned their contract to Investors Insurance Corporation upon the same terms and conditions.

Subsequent to Investors' acquisition of control of the management of American Accident, the latter caused its attorney to submit the exclusive agency contract of July 2, 1964, to the Insurance Commissioner pursuant to Ark. Stat. Ann. § 66-4240 with a suggestion that the contract was not in the best interest of the company. On September 25, 1964, the Insurance Commissioner refused to approve the contract. Shortly thereafter American Accident discharged Pioneer Underwriters.

Robert M. Gannaway testified that he was in charge of the management of American Accident when it entered into the 1964 exclusive agency contract, that he discussed the terms thereof with the Deputy Insurance Commissioner and got his approval, and that American Accident obtained a financial advantage over the renewal terms in the exclusive agency contract with First American Reserve Life Ins. Company.

Richard M. Flahibe qualified as an expert in the field of health and accident insurance management. He described a two year commission of 15% on renewal premiums as being reasonable and proper. However he was not nearly as definite about the 100% commission on the initial premium.

The present management admitted that if they were not obligated to Pioneer Underwriters, they would get the $400,000 annual renewal premiums virtually commission free.

POINTS I & II: Appellants, to avoid liability under both contracts and upon quantum meruit, rely upon Ark. Stat. Ann. § 66-4240 which provides:

"No domestic insurer shall make any contract whereby any person is granted or is to enjoy in fact the management of the insurer to the substantial exclusion of its board of directors or to have the controlling or preemptive right to produce sub-

stantially all insurance business for the insurer, unless the contract is filed with and approved by the Commissioner. . . ."

Obviously this statute would prevent the enforcement of the exclusive agency provision of either contract without the approval of the Insurance Commissioner, but it does not follow that the statute would prevent a quantum meruit recovery. In *Gantt* v. *Ark. Power & Light Co.*, 189 Ark. 449, 455, 74 S. W. 2d 232 (1934), we said:

". . . The general rule is that, where a contract is expressly prohibited by law, and the statute in terms declares the contract to be null and void, no recovery can be had under it, and a taxpayer has a right to maintain an action to recover back money when its officers neglect or fail to perform their duty in that respect. *Capron* v. *Hitchcock,* 98 Cal. 427; *Winchester* v. *Frazier,* (Ky.) 43 S. W. 453; *Milford* v. *Milford Water Co.,* 124 Pa. St. 610.

"The status, however, of appellees does not come strictly within the prohibition of the rule just stated. The prohibitory statute here involved does not, in terms, declare the contract to be 'null and void.' The rule seems to be that, in the absence of the prohibitory words 'null and void' and where the contract has been performed by the parties in good faith, compensation may be retained measured by the reasonable value thereof. Such recovery, however, is not because of the contract, but is grounded squarely upon the proposition that valuable services having been rendered which have been accepted by the parties, it would be inequitable and unjust to permit one party to substantially gain under the contract to the great and irreparable damage of the other."

Neither does it follow that the compensation por-

tion of the exclusive agency contract with First American Reserve Life Ins. Co. is not enforceable. In *Hanauer & Co.* v. *Gray,* 25 Ark. 350 (1869), we had a note payable in Confederate bonds or Tennessee money. We there held:

> ". . . 'A distinction must be taken between the cases in which the *consideration* is illegal in part, and those in which the *promise,* founded on the consideration, is illegal in part. If any part of a consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act, or an illegal promise, although he may have connected with this act or promise another which is legal. But, if one gives a good and valid consideration, and thereupon another promises to do two things—one legal and the other illegal—he shall be held to do that which is legal, unless the two are so mingled and bound together that they can not be separated, in which case the whole promise is void.' "

The record here clearly demonstrates that the 1963 contract contains two separate and distinct promises—*i. e.* one for the payment of the services to be rendered by Pioneer Underwriters, and one for an exclusive agency management contract. The statute relied upon does not attempt to regulate the commission which an insurer may agree to pay to an agent for writing policies. For other cases supporting the *Hanauer & Co. case,* see *Re Port Publishing Co.,* 231 N. C. 395, 57 S. E. 2d 366, 14 ALR 2d 842 (1950) where a collective bargaining contract was held enforceable to recover vacation pay although it contained a "closed shop" provision contrary to North Carolina's "right to work" law.

POINT III. Appellants' arguments under this point appear to be that the $130,000 initial premiums which Pioneer Underwriters received for writing the

policies in the first place is sufficient consideration and also that appellants are entitled to recover from Pioneer Underwriters for premiums that appellants were forced to refund to policy holders in settlement of policy claims.

With respect to the premiums refunded, the record shows that a portion thereof has been collected in a federal district court action against American Pioneer Life Ins. Co. and appellants have made no attempt here to show what portion of the premiums refunded they are still entitled to collect. Furthermore, they appear to also be precluded by the separate and valid promises contained in the 1963 contract with First American Reserve Life Ins. Company.

On the contention that the $130,000 initial premiums received by Pioneer Underwriters constitutes adequate compensation we find no merit. Without either expressing approval or disapproval of the 100% initial premium commission paid to Pioneer Underwriters, we find that appellants are in no position to complain. The record shows that the major portion of the premiums were collected by Pioneer Underwriters when the policies were written for First American Reserve Ins. Co. and that American Accident, in purchasing the policies from First American Reserve, agreed as part of the purchase price that it would pay Pioneer Underwriters the obligations which First American Reserve recognized. The law will not permit one in such a position to retain the benefit of its agreement and at the same time question its validity. See *Murray* v. *Murray Laboratories, Inc.,* 223 Ark. 907, 270 S. W. 2d 927 (1945); *McBlair* v. *Gibbes,* 17 How. (U. S.) 232, 15 L. Ed. 132 (1854).

Furthermore, there is substantial evidence to support the trial court's finding that the amount allowed is due upon a quantum meruit basis.

POINT IV: The contract upon which Investors

Insurance Corporation relies to reverse the judgment of the trial court is not abstracted and although Investors Insurance Corporation designated the exhibited instrument as a part of the record, the exhibit has not been filed with the Clerk of this Court nor made a part of the record. It is appellant's duty to file the instruments upon which it relies for reversal, Ark. Stat. Ann. § 27-2127.3 (Repl. 1962). In the absence of the instrument we cannot say that the trial court erred.

Affirmed.

HARRIS, C. J. and FOGLEMAN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. In my opinion, this judgment should be reversed because of the simple fact that the contract entered into was in violation of the law. Ark. Stat. Ann. § 66-4240 (Repl. 1966) provides as follows:

"No domestic insurer shall make any contract whereby any person is granted or is to enjoy in fact the management of the insurer to the substantial exclusion of its board of directors or to have the controlling or preemptive right to produce substantially all insurance business for the insurer, unless the contract is filed with and approved by the Commissioner. The contract shall be deemed approved unless disapproved by the Commissioner within twenty (20) days after date of filing, subject to such reasonable extension of time as the Commissioner may require by notice given within such twenty (20) days. * * *"

On September 25, 1964, the State Insurance Commissioner disapproved the agency managers' contract between appellant, American Accident and Life Insurance Company and Pioneer Underwriters, Inc., R. B. Phillips and Huey Duke, individually. The commissioner, in disapproving same, stated that he had carefully read the contract, and would first say that he would not

have approved it had it been presented to him at any time following the date of its execution which was July 2, 1964. The commissioner then stated that he was required, under the law (Section 66-4240), to disapprove any such contract if he found that it:

"(a) Subjects the insurer to excessive charges; or

(b) Is to extend for an unreasonable length of time; or

(c) Does not contain fair and adequate standards of performance; or

(d) Contains other inequitable provision or provisions which impair the proper interests of stockholders or members of the insurer."

He concluded:

"It is my opinion that this contract would violate each and every one of the above provisions under Paragraph 2 and for those reasons the contract is this day disapproved."

It is true that the statute only prohibits the *insurance company* from entering into this type of contract without approval of the commissioner, but the statute necessarily prevents any other person from entering into a contract with a domestic insurance company— *for it takes two to contract.*

It must be remembered that the insurance industry is one charged with the public interest, and its dealings are subject to close scrutiny by the Insurance Department. As pointed out in appellant's brief, our Insurance Code is designed to produce an insurance industry operating at a reasonable profit for the benefit of the stockholders, but more importantly, operating in a sound manner for those members of the public who have chosen to become its policyholders.

The majority say that there is substantial evidence to support the trial court's finding that the amount allowed is due upon a *quantum meruit* basis. I am unable to determine, from the record, that the amount of the judgment was based upon *quantum meruit*. Though not at all clear, it appears, as stated by appellant, that the judgment was awarded on the basis of the contract.[1]

Be that as it may, I do not think that appellees are entitled to the judgment obtained since they had already received more than $130,000.00. In this litigation, appellees are attempting to obtain payment for renewal commissions supposedly owed after termination of their services, and this type of recovery, in my view, depends entirely upon the validity of the contract sued upon.

For the reasons herein set out, I respectfully dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I share the views expressed by the Chief Justice. The contract involved was clearly one giving a controlling or preemptive right to an agency manager to produce substantially all insurance business for the insurer.

I feel that I should express my views on the means by which the majority reach a result permitting recovery under this contract. If the statute in question were designed only for protection of insurance companies, I would not feel so alarmed by a result which leads to its

---

[1]From appellant's brief:

"The judgment of the Court does not state whether it is based upon a *quantum meruit* theory, on the general agency contract or under the previous general agency contract with First American Reserve. Apparently, however, the Court awarded judgment on the general agency contract with American Accident and Life Insurance Company inasmuch as the total premium income for the period involved—July 1, 1964, through June 30, 1966—amounted to $962,131.44. Commissions due under the general agency contract would amount to $48,106.57, which is the amount of the judgment less certain setoffs for amounts advanced to appellants, leaving a net recovery of $36,957.57.

easy circumvention. Obviously, this statute was designed not only to protect uninformed investors but, more importantly, to safeguard the rights of unsuspecting policy buyers. The latter are the more innocent victims of a ruined insurance company. The ruin can as readily come by solicitation of poor risks and by payment of excess commissions as by any other means. While this particular situation may not have culminated in such an unhappy conclusion, the statute is designed to avoid such a result. Now, it seems of little value.

I do not agree that recovery can be had under quantum meruit on a contract prohibited by statute, as such a contract is void. A contracting party is allowed to *retain*, not recover, the reasonable value of goods and services under an executed contract when a prohibitory statute does not declare the contract void, or under a contract which is voidable but not void. *Gantt* v. *Arkansas Power & Light Co.*, 189 Ark. 449, 74 S. W. 2d 232; *Smith* v. *Dandridge*, 98 Ark. 38, 135 S. W. 800. While it is true that quantum meruit recovery has also been allowed for goods or services furnished to a city under a contract not formally authorized according to statute, this is done on the basis that acceptance constituted ratification of the contract. *Forrest City* v. *Orgill*, 87 Ark. 389, 112 S. W. 891. This contract could not have been ratified without approval by the Insurance Commissioner, and no question of ratification is involved.

I find no basis for application of *Hanauer & Co.* v. *Gray*, 25 Ark. 350. There the promise was to pay in Confederate or Tennessee funds. The contract was held, in 1869, enforceable as to payment in the latter.

It must be kept in mind that the insurance company promised to pay Pioneer commissions on all renewals of business, in force, as well as commissions on new business written after June 8, 1964, regardless of whether the applications were taken by Pioneer or the business

developed by the company. All new business written by the company's agents was to be turned in or forwarded to Pioneer. Thus, it can hardly be said that the contract is divisible. The language of the court in *Ensign* v. *Coffelt*, 102 Ark. 568, 145 S. W. 231, is applicable here. There we said:

> "* * * It is well settled, we think, that, if a contract is based upon several considerations, some of which are merely insufficient and not illegal, it is not void but may be upheld by the consideration which is sufficient; but if one of several considerations of an entire contract, as a note, is illegal, the whole contract is void. In other words, where the contract is entire, and a part of the consideration thereof is illegal, and the illegal portion is not separable from the whole consideration, then the whole contract is unenforceable. 1 Parsons on Contracts, § 455; 1 Daniel on Negotiable Instruments, § 204; *Edwards* v. *Randall*, 63 Ark. 318; *Hanauer* v. *Gray*, 25 Ark. 350; *Tucker* v. *West*, 29 Ark. 386; *Kizer* v. *Texarkana & F. S. Ry. Co.*, 66 Ark. 348."

An even closer parallel is found in *Bourland, Mayor* v. *First National Bank Building Co.*, 152 Ark. 139, 237 S. W. 681. There, the city took bids for designation of a city depository. Not only were the bidders required to state the rate of interest the city would pay on city funds, but the rate at which they would lend money to the city. The Constitution of Arkansas prohibited a city from issuing interest-bearing evidence of indebtedness. The court declared that the purpose of this provision was to protect the people from abuse of the public credit. We there said:

> "It is well settled that if any part of the entire consideration for a promise or any part of an entire promise be illegal, whether by statute or by the Constitution or from considerations of public policy, the whole contract is void. *Kuhn* v. *Buhl*, 251

Pa. 348, 96 Atl. 977, Ann. Cas. 1917D, 415, and cases cited; *Hazelton* v. *Sheckells*, 202 U. S. 71, 26 Sup. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217.

Where there are provisions in a contract for a compensation which is legal, still if they are blended with those which are forbidden, the whole is a unit and indivisible. The above is the language of Mr. Justice Swayne in *Trist* v. *Child*, 21 Wall. (88 U. S.) 441, 22 L. Ed. 623. The learned justice added that that which is bad destroys that which is good, and they perish together.

Where the lawful and unlawful parts of a contract cannot be separated so as to enforce the one and annul the other, it is an indivisible contract and therefore null and void throughout. *Edwards* v. *Randle*, 63 Ark. 318, 38 S. W. 343, 36 L. R. A. 174, 58 Am. St. Rep. 108. And in that case the court quoted with approval the following:

'If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void.' "

I do not see how the contract here involved can be divided. It can hardly be said that the rates of commissions were unrelated to the agency management agreement giving commissions to Pioneer on all business theretofore or thereafter written.