BOURLAND *v.* FIRST NATIONAL BANK BUILDING COMPANY.

Opinion delivered February 20, 1922.

1. MUNICIPAL CORPORATIONS—SELECTION OF CITY DEPOSITORY—DISCRETION.—Under Acts 1913, p. 48, authorizing a commission form of government for certain cities of the first class, and providing (§ 21) that a contract for the custody of city funds shall be let to the bank offering the best inducements as to interest and security, and that the board of commissioners shall have the right to reject any and all bids, *held* that there is a discretionary power in the board in determining the depository, that the board had a right to consider the bids from all standpoints, and not merely from the standpoint of the highest rate of interest offered by any particular bidder, and that an abuse of discretion in this respect is subject to review in the courts.

2. MUNICIPAL CORPORATIONS—NUMBER OF DEPOSITORIES.—Acts 1913, p. 48, § 21, providing that when a city depository is selected all city funds shall immediately be deposited therein, does not limit the number of depositories to one bank if in the sound discretion of the board more than one depository should be deemed best for the interest of the city; the board might advertise for bids .for one depository for all the funds or for bids for the various funds separately, but it could .not, after advertising for one depository for all the funds, apportion the funds among separate depositories.

3. MUNICIPAL CORPORATIONS—INTEREST-BEARING EVIDENCE OF INDEBTEDNESS.—Under Const. 1874, art. 16, § 1, prohibiting any city from issuing interest-bearing evidences of indebtedness, a city can not make a binding contract by which it agrees to pay interest on its indebtedness.

4. CONTRACT—CONSIDERATION PARTLY ILLEGAL.—If any part of the entire consideration for a promise or any part of the entire promise be illegal, whether by statute or by the Constitution or from considerations of public policy, the whole contract is void.

5. CONTRACTS—ILLEGALITY.—Where the lawful and unlawful parts of a contract can not be separated, so as to enforce the one and annul the other, it is an indivisible contract, and therefore null and void throughout.

6. MUNICIPAL CORPORATION—LEGALITY OF CONTRACT WITH DEPOSI-
TORY.—Where a contract by a city with a bank depository has for
its consideration in part the rate of interest which the deposi-
tory bank will charge the city interest for borrowed money, such
a contract is entire, and not severable in its parts, and the whole
contract is illegal and void.

Appeal from Sebastian Chancery Court, Ft. Smith
District; *J. V. Bourland,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellees, describing themselves as owners of real
property and taxpayers of Fort Smith, Ark., brought
separate suits in equity against appellants to prevent
them from carrying out a contract whereby the City Na-
tional Bank was designated as a depository for the city
and improvement district funds of the city of Fort
Smith, for the period of two years.

In their answer, it was claimed by appellants that
the commissioners had the right under the statute to
select a depository, and that they had selected the City
National Bank.

The cases were consolidated and tried together.
While the record in this case is very lengthy, the issues
presented by the pleadings and the facts may be stated
in short form.

The city of Fort Smith adopted the commission form
of government, and the mayor and commissioners adver-
tised under the provisions of the statute for bids from
such banks as might desire to become the city depository.
In response to such notice the various banks in the city
of Fort Smith filed their bids. Each bid stated the rate
of interest the bank would pay for the funds of the city
and the various improvement districts situated therein.
After opening the bids it was found that no provision
had been made for the city borrowing money. For the
greater part of the year the city was required to borrow
large sums of money with which to meet the expenses of
the city government. In order to do this, it was the prac-
tice of the city to borrow money and pay interest on the

money borrowed. Hence the mayor told the bidders that the city would have to consider loans and to obtain them from whatever bank was selected as a depository; that the city had to borrow considerably more money than it had to deposit; and that this was a consideration which would be expected of the depository. Each bank was asked to consider this and amend its bid by stating at what rate of interest it would lend money to the city. The meeting was adjourned until the next day so that all the banks might have a chance to make bids under the notice as amended. Some of the banks came back and changed their bids and others did not.

It was understood by all the parties concerned that the lending of money to the city by the depository would be a substantial consideration in selecting such depository. The banks in their bids adopted various rates of interest for the various funds under the control of the city and also for the money which it would lend the city. For instance, the First National Bank of Fort Smith bid a high rate of interest on the average daily balances for all the funds of the city of Fort Smith and the improvement districts therein, but bid a higher rate for the money it would loan the city with which to carry on the city government than did the City National Bank. The mayor and commissioners, however, found that the difference between the bids of the various banks and the City National Bank was very small on the various funds under the control of the city, and for the reason that the City National Bank offered a lower rate of interest on money to be borrowed by the city and because the city had to borrow more money than it deposited, the City National Bank was selected as the depository.

The above facts are established by a decided preponderance of the evidence.

The record also shows that the City National Bank had purchased the waterworks bonds, and that one of the considerations of the purchase was that the proceeds

should remain in the hands of the bank until they were used in the construction of the waterworks.

The chancellor found that the selection of the City National Bank as the depository of the city of Fort Smith for the ensuing two years under the statute was an abuse of discretion on the part of the mayor and commissioner of the city, and their action therefore invalid.

The court further found that the funds of the waterworks district derived from the sale of the bonds purchased by the City National Bank should remain in the hands of said bank because the contract had been executed in part on both sides, and that no one of appellees, who were the plaintiffs in the court below, had offered to restore to the City National Bank the consideration moving to it from said waterworks district. It was therefore decreed that appellants be enjoined from entering into or carrying out a contract whereby the City National Bank should become the depository of the city of Fort Smith or any of the improvement districts of the city under the award made by the mayor and the commissioners to said bank.

The court refused to direct the mayor and board of commissioners to select either of the other banks as the depository of the city on the bid filed by such bank.

Both parties have duly prosecuted an appeal to this court.

*Fadjo Cravens, Cravens, Oglesby & Cravens* and *James B. McDonough,* for appellants.

1. In the matter of selecting a depository the law confers a discretionary power upon the board of commissioners, and before the court could grant the relief prayed for, the plaintiffs must both have alleged and proved an abuse of that discretion. Acts 1913, p. 80, §§ 21, 24; 125 S. W. (Mo.) 1140; 227 S. W. (Tex.) 974; 229 S. W. 663; 94 Ark. 311.

2. The courts will not enjoin public officers restraining them from the exercise of their discretionary

powers.  94 Ark. 422; 85 *Id.* 156; 226 S. W. 758; 269 Fed. 712; 64 S. E. 1074; 183 Ill. App. 506; 81 Kan. 153; 25 L. R. A. (N. S.) 228; 140 Pac. 1051.

Where no abuse of discretion is shown, injunction will not lie to control the act of a board or officer.  130 N. Y. S. 216; 234 U. S. 627.  See also 69 So. 554; 182 S. W. 29; 94 S. E. 229; 183 Pac. 134; 99 S. E. 119; 180 Pac. 229; 14 Cyc. 383.

3.  The interest rate alone does not control.  Acts 1913, p. 80, *supra;* 227 S. W. 974.

4.  In determining the questions involved in this case the question whether or not the city has power to pay interest on money borrowed, is not material.  None of the plaintiffs are in a position to urge that question. See 94 Ark. 311.

*Daily & Woods,* for appellees.

There can be no answer to the judgment of the trial court that the act of the defendants in declaring the City National Bank the depository of the city and of each of the improvement districts, and in awarding to it the funds of the city and of said districts for the ensuing two years, was unwarranted, improvident and an abuse of discretion.  Under the act, the only discretion vested in the commissioners is to pass upon the relative security of the banks.  If, in their judgment, one of the banks is a stronger or a safer bank, they no doubt have the right to select such bank, even though it offers a lower rate of interest; but this discretion must be exercised within reasonable limits.  But the evidence, and the findings of the chancellor based thereon, show that the commissioners did not exercise a discretion within the meaning of the law, but acted arbitrarily and without warrant, and for reasons that were either arbitrary, capricious or illegal.  Plaintiffs' suits are brought to prevent political favoritism in the handling of the funds of the city and of its various improvement districts.  They ask that the commissioners be enjoined from letting a con-

tract to the poorest bidder, and that each fund be award-
ed to the bank which was the highest bidder for that
particular fund.   They insist on what this court has de-
clared the law to be in *Grant County Bank* v. *McClellan,*
112 Ark. 550, viz:   "The whole theory and purpose of
such legislation is to secure the highest returns for the
use of public funds," and, "that there should be com-
petition and not favoritism."   See also 199 S. W. 250;
214 S. W. 528; 94 Ark. 311.

HART, J. (after stating the facts).   The city of Fort
Smith adopted the commission form of government for
cities of the first class.   Under the statute a board of
commissioners, consisting of the mayor and others, is the
governing body of the city.   The mayor and commis-
sioners also constitute the board of improvement for all
improvement districts existing or created in the city.
The statute provides for the selection of a city deposi-
tory for all the various funds under the control of the
board of commissioners.   Acts of 1913, p. 48.

The issues raised by this appeal depend upon the
construction to be given to secs. 21 and 24 of the act.

Sec. 21 provides for the selection of a city deposi-
tory, and is as follows:

"The board of commissioners shall advertise for
proposals for the custody of city funds from any bank
or trust company located in said city.   The board shall
advertise for sealed bids for keeping the said funds for
a term of two years and until a new selection shall be
made.   The bank or trust company offering the best in-
ducements as to interest and security shall be selected as
such depository.   The rate of interest allowed on average
daily balances shall be stated in all bids.   Other things
being equal, that bank or trust company shall receive
preference which allows the city the highest rate of in-
terest.   The board shall have the right to reject any and
all bids.   A bond shall be executed by the depository se-
lected by the city in such sums as will equal double the
amount of estimated largest deposit, conditioned that it

will safely keep all funds deposited, and pay on presentation all vouchers drawn on it when the money is on deposit, with the sureties approved by said board. Interest shall be computed on average daily balances, payable to the city monthly, and the minimum rate of interest accepted shall be two per cent. on average daily balances. The board shall not be held liable for loss of any funds by reason of the insolvency of said depository; provided said board has, in all respects, complied with the law relating thereto. When a city depository is selected under the terms of this act, all city funds shall immediately be deposited therein. All moneys paid out shall be paid upon the voucher of the clerk of the city, countersigned by the mayor.''

Sec. 24 provides that the mayor and commissioners shall advertise for proposals for the custody of the funds for each improvement district, and reads in parts as follows:

''Sec. 24.   The mayor and commissioners, as constituting the improvement board of such district or districts, shall advertise for proposals for the custody of the funds of each improvement district as provided in this act for the custody and deposit of city funds, and all the provisions of section 21 of this act as to city funds, so far as applicable, govern and apply to the deposit at interest of improvement district funds, but separate bonds shall be required in favor of and payable to each improvement district, respectively, to protect the funds of such district, and the accounts and deposits of each improvement district shall be kept separate by the depository selected.''

In construing the act it will first be necessary to determine whether there is an imperative duty upon the board of commissioners to let the contract for a depository to the highest bidder. In construing the statute as a whole, we have reached the conclusion that discretionary power is lodged in the board of commissioners in the matter of selecting a city depository.

It is true that § 21 provides that the contract shall be let to the bank offering the best inducements as to interest, and that, other things being equal, the bank shall have preference which allows the city the highest rate of interest; and that the chief object of the section is to secure to the city the highest rate of interest obtainable for the funds under its control. It will be noted, however, that immediately following this the section provides that the board shall have the right to reject any and all bids. We are of the opinion, therefore, that there is a discretionary power in the board in determining the depository, and that an abuse of discretion in this respect is subject to review in the courts.

In *Gaines* v. *Thompson*, 7 Wall. U. S. 347, Mr. Justice Miller stated the general doctrine to be, "that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is, that the law reposes this discretion in him for that occasion, and not in the courts." See also *Regan* v. *Iron County Court*, (Mo.) 125 S. W. 1140; *Donna Independent School Dist. v. First State Bank of Donna*, (Tex. Civ. App.) 227 S. W. 974; *Hurley* v. *Citizens' Nat. Bank*, (Tex. Civ. App.) 229 S. W. 663, and *Hurley* v. *Camp*, (Tex. Civ. App.) 234 S. W. 577.

Applying the fundamental rule of construction that an act must be construed so as to give force and effect to it as a whole, not overlooking, however, its purposes. we are of the opinion that a sound discretion is vested in

the board of commissioners in selecting the depository. The board of commissioners had a right under the statute to consider the bids from all standpoints, and not merely from the standpoint of the highest rate of interest offered by any particular bidder.

We do not think that the word "depository" as used in the act means a single bank. It is true the concluding part of § 21 provides that when a city depository is selected, all city funds shall be immediately deposited therein. As said in *State* v. *Martin,* 60 Ark. 343, "a" is a prefix of vague meaning, and in the connection used is too indefinite to limit the number of depositories to one bank, if in the sound discretion of the board more than one depository should be deemed best for the interest of the city. The object of the statute is to adopt the depository plan of keeping the city funds to the end that the city may obtain the interest on the average daily balances and not to restrict the letting to one bank. It might be that no one bank was able to bid for all the funds or that it needed them in its business. The main fact is to let out the funds to some responsible bank or banks. Section 24 provides for separate bonds by the depository payable to each improvement district. The board of commissioners, if it saw fit, might advertise for bids for one depository for all the funds, or, if it was for the best interest of the city and the improvement districts, it might advertise for bids for the various funds separately. It could not, however, advertise for one depository for all the funds and then let the funds for a particular improvement district to a separate depository, because a bank had bid a higher rate for the funds of that particular district. In short, the board could not advertise for bids to be made of the various funds as one depository and then let contracts to different banks because some bank had bid more for the funds of a particular district, when its bid as a whole was less than that of some other bank. The board in its discretion may let the contract for all the funds controlled by the city as a whole or it might separate them

in the letting; but it must pursue whatever plan it adopts in its notice to the bidders. This view is at least in harmony with the spirit of the law.

We now come to the question of whether there could be a legal contract for a city depository under the facts as presented by the record. After the bids had come in, the board announced to all the bidders that the city borrowed more money for the purpose of running the city government than it had to lend, and for that reason the bidders would be required to state not only the rate of interest they would pay for the various funds deposited by the city, but also the rate of interest at which they would lend money to the city. Some of the banks amended their bids in conformity with this requirement, and the bid of the City National Bank was accepted on that basis. That bank offered to lend money to the city at a lower rate of interest than the other bidders, and this was thought by the board of commissioners to offset the lower rate it would pay the city as interest on the funds deposited with it.

We are of the opinion that this rendered the contract illegal and void. Our Constitution has thrown a restraint around the State, county and municipal corporations in this State in this respect. Art. 16, § 1, of the Constitution of 1874, reads as follows:

"Sec. 1. Neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants or scrip."

This provision was evidently intended to protect the people from disasters which might result from the abuse of the public credit. The court in construing the

provision has held that a municipal corporation can not issue interest-bearing evidences of indebtedness. *Forrest City* v. *Bank of Forrest City,* 116 Ark. 377. It would be equally true that it could not make a legal and binding contract by which it agreed to pay interest on its indebtedness. Such a contract would also come within the prohibition of the section of the Constitution.

It is well settled that if any part of the entire consideration for a promise or any part of an entire promise be illegal, whether by statute or by the Constitution or from considerations of public policy, the whole contract is void. *Kuhn* v. *Buhl,* (Pa.) Ann. Cas. 1917-D, p. 415, and cases cited; and *Hazleton* v. *Sheckells,* 202 U. S. 71.

Where there are provisions in a contract for a compensation which is legal, still if they are blended with those which are forbidden, the whole is a unit and indivisible. The above is the language of Mr. Justice SWAYNE in *Trist* v. *Child,* 21 Wall. (U. S.) 441. The learned justice added that that which is bad destroys that which is good, and they perish together.

Where the lawful and unlawful parts of a contract can not be separated, so as to enforce the one and annul the other, it is an indivisible contract and therefore null and void throughout. *Edwards* v. *Randle,* 63 Ark. 318. And in that case the court quoted with approval the following:

"If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void."

In the instant case the provisions of the contract are dependent upon each other and are not severable. The record shows that the board of commissioners considered equally the illegal as well as the legal parts of the bids in designating the City National Bank as the depository. All the bidders were required to state in

their bids what rate of interest they would charge the city for money borrowed by it as a prerequisite to being allowed to make bids on the rate of interest they would pay the city for the funds deposited by it. The bidders considered what rate they would charge the city for borrowed money in arriving at the rate they would pay the city on the average daily deposits, and the board did likewise in designating the depository.

As we have already seen, an agreement between the city and the bank for the former to pay interest to the latter on borrowed money would be illegal and void. The contract was an entire one and not severable in its parts, and it follows that the whole contract was illegal and void.

The decree of the lower court proceeded upon the theory that there was an abuse of discretion upon the part of the board of commissioners. No bad motives are ascribed to the members of the board, and it seems that they acted for what they thought to be to the best interest of the city. This matter, however, is not presented here for review for the reason that we have held the contract to be illegal and void. Because the contract was illegal and void, the chancellor was right in enjoining the board of commissioners from selecting the City National Bank as depository for the city of Fort Smith. The chancellor was also right in refusing to direct the board of commissioners to appoint any of the other bidders as the city depository for the reason that the contract was let upon an illegal basis and the whole transaction was tainted with the illegal requirement that the bidders should specify in their bids the rate of interest at which they would lend money to the city of Fort Smith.

It appears from the record that the contract between the waterworks improvement district and the City National Bank has been for the most executed on both

sides, and for that reason we need not consider it any further than to say that the decree of the chancellor was correct.

From the views we have expressed, it results that the decree of the chancellor, as a whole, was correct, and it will be affirmed.