DAILEY *v.* CITY OF LITTLE ROCK.

5-1214                                              299 S. W. 2d 825

Opinion delivered March 18, 1957.

*Harold Hall,* for appellant.

*O. D. Longstreth, Jr.,* City Atty.; *Joe Brooks,* Asst. City Attorney, for appellee.

MINOR W. MILLWEE, Associate Justice. This is a taxpayer's suit by the appellant, Dalton Dailey, to enjoin appellees, City of Little Rock, and its officers, from

carrying out the provisions of a city ordinance and performing the terms of a contract executed between the City and International Harvester Company for the "lease purchase" of 14 garbage trucks for use by the Sanitation Department of the City.

Appellant alleged the contract was void on three grounds: (1) That it was not let to the lowest responsible bidder; (2) that it provided for payment of moneys by the City beyond the current fiscal year in contravention of Amendment 10 to the Arkansas Constitution; (3) and that the trucks were not suitable for the use for which they were intended. The City filed a motion to dismiss and answer in which it admitted enactment of the ordinance and alleged that the funds appropriated therein were for use as rental of the trucks pursuant to a "Lease Agreement" executed by it with the International Harvester Company. All other material allegations were denied.

At the trial appellant offered no evidence in support of his allegation that the contract in question was void on the first and third grounds above set out. Under the "Lease Agreement" in question International Harvester Company purported to lease the 14 garbage trucks to the City for a term commencing with the date of delivery in 1956 and ending December 31, 1956, with the right of renewal at the option of the City on January 1, 1957, for a year, on January 1, 1958, for another year, and on January 1, 1959 for a period of 8 months. "Rentals" under the agreement were payable as follows: For rent to December 31, 1956, $27,000 cash and $7,200 credit on 11 used trucks traded in; and thereafter rentals of $3,681.85 per month for such term as the City should see fit to exercise its option to renew during the life of the agreement. The City was also granted an option to purchase the trucks at the end of the lease period in 1956, or during any renewal thereof, for $152,018.24, and all moneys paid as rentals were to be credited on the purchase price.

The only other proof adduced by appellant was the testimony of a deputy city clerk to the effect that the

City had $29,617.07 in the general fund on January 1, 1956, and $181,802.79 in said fund on July 30, 1956; that an ordinance earmarked $50,000 to be in the fund at the end of 1956; and that, based on anticipated revenues and expenditures for the balance of the year, there would probably be $50,000 in said fund at the end of 1956. The Chancellor found the evidence insufficient to support the relief prayed in the complaint which was dismissed for want of equity.

For reversal appellant argues the agreement between the City and International Harvester Company is not a lease with option to purchase but is actually a contract of purchase, or sale, which is void because it constitutes a contract made by the City in excess of its revenue for the year in which the contract was made in violation of Amendment 10 to the Constitution. Appellees just as earnestly insist that the instrument is a true lease agreement with option to purchase which did not commit any revenues beyond the calendar year 1956. While it must be conceded that the agreement has characteristics common to both a lease and a sale, we find it unnecessary to determine the issue. Regardless of the true nature of the transaction, the burden was on the appellant to show that performance of the agreement would require an expenditure of revenues by the City in excess of those for the year in which the contract was made. The Chancellor was justified in concluding that appellant did not discharge this burden. The deputy clerk who gave the only testimony in this connection was not asked, and did not state, the amount of revenues of the City for the year nor did he indicate that the agreement would commit the City for an amount in excess of unexpended revenues for the year. The implication of his opinion that the earmarked sum of $50,000 would be left in the general fund at the end of the year, after all anticipated expenditures, is to the contrary. Under this state of the proof, we cannot say the Chancellor erred in denying the relief prayed.

Affirmed.