The Honorable Gloria B. Cabe Arkansas House of Representatives 415 Colonial Court Little Rock, AR 72205
Dear Representative Cabe:
This is in response to your request for an opinion regarding the constitutional propriety of cities and counties entering into lease-purchase agreements for equipment. You have asked several specific questions concerning the validity of these agreements in light of Amendments 10 and 13 to the Arkansas Constitution, and I shall address your questions in the order in which they appear in your letter.
1. It is my opinion that a city or county may enter into a lease-purchase agreement such as the one you have submitted with your request, without violating Amendment 10, providing that the agreement is written so that the city or county does not obligate itself to payments which exceed the revenues for the fiscal year in which the contract is made.
Amendment 10 to the Arkansas Constitution provides in pertinent part as follows:
 The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and NO COUNTY COURT OR LEVYING BOARD OR AGENT OF ANY COUNTY SHALL MAKE OR AUTHORIZE ANY CONTRACT OR MAKE ANY ALLOWANCE FOR ANY PURPOSE WHATSOEVER IN EXCESS OF THE REVENUE FROM ALL SOURCES FOR THE FISCAL YEAR IN WHICH SAID CONTRACT OR ALLOWANCE IS MADE; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; NOR SHALL ANY CITY COUNCIL, BOARD OF ALDERMEN, BOARD OF PUBLIC AFFAIRS, OR COMMISSIONERS OF ANY CITY OF THE FIRST OR SECOND CLASS, OR ANY INCORPORATED TOWN, ENTER INTO ANY CONTRACT OR MAKE ANY ALLOWANCE FOR ANY PURPOSE WHATSOEVER OR AUTHORIZE THE ISSUANCE OF ANY CONTRACT OR WARRANTS, SCRIP, OR OTHER EVIDENCES OF INDEBTEDNESS IN EXCESS OF THE REVENUE FOR SUCH CITY OR TOWN FOR THE CURRENT FISCAL YEAR; nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, or any city of the first or second class or incorporated town sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year. (Emphasis supplied.)
Contracts which are made in violation of this Amendment are wholly void. Warren v. State, 232 Ark. 823, 340 S.W.2d 400 (1960).
This amendment, adopted in the General Election of 1924, was designed to make cities and counties operate on a sound, cash financial basis, rather than engaging in deficit spending. However, soon after the adoption of the Amendment the Arkansas Supreme Court recognized that there were some necessary items which could not be paid for with the revenues for one year. Consequently, the Court issued a number of opinions holding that a county might contract to build a courthouse or jail and apportion the cost over a period of several years, so long as the apportioned cost for each year, together with the other county expenditures, did not exceed the county revenues for that year. Kirk v. High, 169 Ark. 152, 273 S.W. 389 (1925); Lake v. Tatum,175 Ark. 90, 1 S.W.2d 554 (1927); Norman v. Blair, 177 Ark. 649,7 S.W.2d 328 (1928).
More recently, the Court has considered cases involving lease agreements entered into for a number of years. In Dailey v. City of Little Rock, 227 Ark. 537, 299 S.W.2d 825 (1957), the City entered in a "lease-purchase" agreement whereby it leased garbage trucks for one year, with the option to renew the agreement each December for each of three succeeding years. Rent was paid monthly, and the City had the right to purchase the trucks at the end of any of the lease years. A taxpayer sued, claiming that this was a straight purchase contract in violation of Amendment 10. The Court did not determine whether this was actually a "lease-purchase" agreement or a sale. The Court held that the burden of proof was on the plaintiff to show that performance of the contract would result in expenditures in excess of that year's revenues, and that the plaintiff failed to meet his burden. See also Searcy County v. Horton, 270 Ark. 22, 603 S.W.2d 437 (Ct. App. 1980).
In the agreement which you submitted, the Lessee (municipality) pledges to do everything possible to secure funds for the entire Lease Term, and states its intention to make payments for the entire Lease Term if such funds are legally available. However, Section 4 allows the Lessee to terminate the Lease if funds cannot be made available:
 In the event no funds or insufficient funds are appropriated and budgeted or are otherwise available by any means whatsoever in any fiscal period for Lease Payments due under this Lease, then the Lessee will immediately notify the Lessor or its assignee of such occurrence and this Lease shall terminate on the last day of the fiscal period for which appropriations were received without penalty or expense to Lessee of any kind whatsoever, except as to the portions of Lease Payments herein agreed upon for which funds shall have been appropriated and budgeted or are otherwise available.
Pursuant to this provision, the Lessee incurs no obligation for a future lease year unless funds are available and appropriated. Consequently, this type of agreement would not violate Amendment 10, so long as the city or county does not continue the lease and make payments if it does not have sufficient revenues to do so.
One thing that the municipality should keep in mind when dealing with this particular agreement is the fact that the rent payments are not the only payments potentially required per year by the Lease. The Lease also provides that Lessee shall pay all costs connected with delivery of the equipment (Section 1); shall pay freight prepaid and insured to any location in the United States designated by Lessor in the event Lessee terminates the Less under Section 4 (Section 4); will pay all costs, claims, damages, fees and charges arising out of use, possession or maintenance of the equipment (Section 10); shall pay all taxes and charges imposed upon ownership, leasing, rental, sale, purchase, possession or use of the equipment (Section 13); and will at its expense maintain various types of insurance coverage on the equipment (Section 15). These costs should be kept in mind when determining whether the city has available funds to maintain the Lease.
More importantly, there are some provisions of the Lease which could obligate the Lessee for amounts of money undetermined at the time the decision is made to enter into the Lease. Section 14 states that in the event the Lessor decides that the equipment has been lost, stolen, destroyed or damaged beyond repair, Lessor may demand that Lessee replace the equipment or pay Lessor all amounts then owed on the Lease PLUS an amount equal to the concluding payment that would be required at that time to purchase the equipment. Section 16 states that Lessee shall indemnify Lessor against any and all claims, actions, proceedings, expenses, damages or liabilities, including court costs and attorney fees, arising from the selection, purchase, delivery, possession, use, operation, rejection or return of the equipment. And in the event of a default by Lessee under the Lease, Lessor may declare ALL remaining amounts due during the Least Term payable, and may sell or lease the equipment and require Lessee to pay the difference between the sale or rental price and the amounts payable by Lessee under the Lease. All of these contingencies could result in the city being obligated for amounts beyond the revenues available for a particular year. Consequently, these type provisions should be avoided in lease-purchase agreements.
Section 25 of this agreement states that if any provision of the Lease is found to be prohibited by law, the remainder of the Lease shall remain valid. However, since a contract which obligates the city or county to pay beyond its fiscal year has been declared to be "wholly void" by the Supreme Court, this severability clause might not save a lease agreement containing a term in violation of Amendment 10.
2. It is my opinion that the agreement which you submitted would be in violation of Amendment 13 to the Arkansas Constitution, which states in pertinent part:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
The Amendment further provides that cities of the first and second class may, with the consent of a majority of qualified electors, issue bonds for certain enumerated purposes (such as purchase of rights-of-way for streets, construction of streets and sewers, purchase and development of parks, purchase of fire fighting and street cleaning equipment, etc.).
In construing this Amendment, the Arkansas Supreme Court has held that a city may not contract with its depository bank to pay the bank a stipulated rate of interest on loans to the city, Bourland v. First Nat. Bank Bldg. Co., 152 Ark. 139, 237 S.W. 681 (1922); and that county warrants, issued in payment of interest on debts of the county, are interest-bearing evidences of indebtedness prohibited by Amendment 13, Harriman Nat. Bank. v. Pope County,173 Ark. 243, 292 S.W. 379 (1927). In these cases the Court stated that the contract and warrants were wholly void.
The Court has held that a city may issue interest-bearing bonds for specific projects, such as a water or sewer system, so long as the bond debt is payable with income derived from the operation of the special activity rather than from general tax revenues of the city. Snodgrass v. City of Pocahontas, 189 Ark. 819, 75 S.W.2d 223
(1934); Austin v. Manning, 217 Ark. 538, 231 S.W.2d 101
(1950). Furthermore, the Board of an Improvement District is not a "municipality" within the meaning of the Amendment 13 proscription against issuing interest-bearing evidences of indebtedness. Fitzgerald v. Walker, 55 Ark. 148, 17 S.W. 702
(1891).
In addition to the projects for which cities may issue bonds under Amendment 13, counties are authorized to issue interest-bearing bonds for the construction of courthouses, jails and hospitals (Amendment 17), and cities and counties may issue bonds for industrial development purposes (Amendment 49).
Under Section 3 of the submitted agreement, Lessee (municipality) agrees to pay to Lessor the Lease Payments "including the interest portion," as designated on Exhibit B. Exhibit B contains a column for listing a specific "interest portion" for each payment made. This Lease is an obligation of the city for the initial fiscal year and each successive year for which the city opts to continue the agreement. Since a city cannot contract to pay interest on its indebtedness, this Lease may be in violation of Amendment 13.
Although this is a lease rather than a bond, if the particular equipment being leased is to be used in an activity for which the city may issue bonds under Amendment 13, and if the indebtedness were to be paid with proceeds from the specific activity involved, and if a majority of the electorate approved of the indebtedness, this could validate the Lease. However, in general a lease agreement for equipment which contains interest built into the lease price would be constitutionally suspect.
3. It would not be appropriate for my office to generally validate this least agreement as complying with all laws of the State of Arkansas. This is a question which is better left to the city or county attorney for the particular locality involved. However, there are certain provisions which cause me some concern.
Section 4 states that during the Lease Term, Lessee will not give priority in the application of funds to any other functionally similar equipment. The other necessary expenses of the city government are binding obligations which must be paid, and one particular expense should not be said to take precedence over other necessary expenses. Ivy v. Edwards, 174 Ark. 1167, 298 S.W. 1006
(1927). The city should not bind itself in this Lease to pay this one obligation in derogation of others which may be more compelling.
Section 6 requires the city attorney to execute an opinion stating that "this Lease constitutes a legal, valid and binding obligation of the Lessee enforceable in accordance with its terms." This assurance of validity and legality is quite a broad-based "warranty." Section 8 grants to Lessor a security interest in the equipment and "any proceeds therefrom." The city attorney should make sure there is nothing which restricts the city's authority to so encumber these proceeds. Finally, Section 18 allows the Lessor to assign its interest in the Lease and equipment to a third party, and to also assign a security interest in the equipment to said third party. Inasmuch as Section 7 vests title to the equipment in Lessee upon its acceptance of the equipment, Lessee should have some say in Lessor assigning a security interest in said equipment.
4. Were a city or county able to enter into a lease-purchase agreement, the maximum allowable rate of interest would be 5% above the discount rate.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Jeffrey A. Bell.