POTOMAC LEASING CO. *v.* VITALITY CENTERS, INC. and Claudene CATO

86-73                                                        718 S.W.2d 928

Supreme Court of Arkansas
Opinion delivered November 10, 1986

*Wright, Lindsey & Jennings*, for appellant.

No brief filed.

JACK HOLT, JR., Chief Justice. The issue here is whether a lessee of goods may raise illegality of the lease as a defense to an action to enforce the lease, when the illegality arises from the lessee's intended use of the goods. We hold the lessee may not under these circumstances and reverse the trial court. Jurisdiction is pursuant to Sup. Ct. R. 29(1)(c).

Vitality Centers, Inc., appellee, entered into a lease agreement, which was guaranteed by Claudene Cato, co-appellee, to lease an automated telephone system from Potomac Leasing, Co., appellant. Leads Unlimited, Inc., not a party, manufactured the telephone system and it was apparently a Leads Unlimited salesman whom Cato dealt with in deciding to acquire the equipment while at a convention in Cincinnati. Potomac's manager testified that the salesman never worked for Potomac and that Potomac only becomes involved after the vendor and customer have reached an agreement. Potomac simply buys equipment from the vendor and enters a lease agreement with the customer after the vendor and customer have agreed on the product and its financing.

The lease stated that the "[l]essee acknowledges that Potomac Leasing Company is neither the manufacturer, distributor or seller of the equipment and has no control, knowledge or familiarity with the condition, capacity, functioning or other characteristics of the equipment." Potomac's manager testified that he did not know if Leads Unlimited was one of the more than 3,000 vendors that Potomac had dealt with before and that

Potomac merely distributes literature on its leasing arrangements to salesmen for many such vendors.

After appellees made a few payments on the noncancellable, 48-month lease, the equipment was sent back to Potomac. When Potomac sued to enforce the lease, appellees answered, claiming that the subject matter of the lease was illegal. Appellees had intended to use the equipment to randomly dial phone numbers, give a message advertising certain products, and record the responses of the person answering the call. Arkansas Stat. Ann. § 41-4162 (Supp. 1985) prohibits this use:

> It shall be unlawful for any person to use a telephone for the purpose of offering any goods or services for sale, or for conveying information regarding any goods or services for the purpose of soliciting the sale or purchase thereof, or for soliciting information, gathering data, or for any other purpose in connection with a political campaign when such use involves an automated system for the selection and dialing of telephone numbers and the playing of recorded messages when a message is completed to the called number. Provided, however, that nothing in this Act [§§ 41-4162 — 41-4164] shall prohibit the use of a telephone involving an automated system for the selection and dialing of telephone numbers, and the play of recorded messages to inform the purchaser of such goods or services concerning receipt and availability of such goods or services for delivery to the purchaser, or to convey information concerning any delay or pertinent information about the current status of any purchase order previously made.

> Nothing herein shall prohibit the use of automated telephone systems with recorded messages when the calls are made or messages given solely in response to calls initiated by the person to which the automatic call or recorded message is directed. [Acts 1981, No. 947, § 1, p. 2271.]

Because the appellees did not submit a brief to this court, "[w]e therefore decide the case upon the record as abstracted by the appellant, it being the appellee's responsibility to bring to our attention any matters justifying the judgment of the trial court." *Turner* v. *Bailey*, 271 Ark. 215, 607 S.W.2d 674 (1980).

■■ The trial court, in its letter opinion, stated: "The equipment involved here, the subject matter of the lease, is specifically the type of equipment prohibited by statute. With the subject matter of the lease being illegal, the contract is void." We disagree. That the subject matter of a contract is to be used for an illegal purpose, does not in itself make a contract for the sale of that product void. In *Dillard* v. *Kelley*, 205 Ark. 848, 171 S.W.2d 53 (1943), we said, "While a transaction contrary to public policy is void, however, one who is not in *pari delicto*, or who is not a participant in the wrong at all, is not, on account of the character of the transaction, barred from asserting rights under it."

■ This is so even when the seller has knowledge of the illegal purpose as long as he has not participated in that use:

> The rule supported by the weight of authority and approved by this court is that, though the contract is entered into by one of the parties for the furtherance of an illegal purpose, the contract will not be rendered illegal as to the other party, though he had knowledge of such illegal purpose, provided he does nothing in furtherance thereof.

*Ashford* v. *Mace*, 103 Ark. 114, 143 S.W. 1081 (1912), quoting *Hollenberg Music Co.* v. *Berry*, 85 Ark. 9, 106 S.W. 1172 (1907).

■ An exception is when the seller knows the product will be used in "flagrant violation of the fundamental rights of man or society." *Ashford, supra.*

6A *Corbin on Contracts*, § 1519 (1962) states essentially the same rule as the Arkansas cases:

> If the terms of a contract and its actual performance are all in themselves lawful, it is not made unlawful by the fact that the subject matter is capable of being put to illegal uses. Fire arms, a house, a motor car, liquors, a fountain pen can all be used for tortious or criminal purposes; but a contract for their sale is not for that reason invalid. Such a bargain is not enforceable by the buyer, however, if he buys with the purpose of making an illegal use of the subject matter. A seller who, with knowledge of the buyer's illegal purpose, makes the sale and delivers the subject matter, thereby increases the probability that the illegal purpose will be carried out, even though he does not participate in

the purpose, urges its abandonment, and hopes for the best. This fact makes the bargain unenforceable by the seller also, if the illegal purpose of which he has knowledge involves the commission of a serious crime or an act of great moral turpitude. In cases other than these, the seller's knowledge of the purpose does not prevent his enforcement of the bargain, if he in no way participates in the purpose and does not act in furtherance of it aside from making the sale.

*Accord*, Restatement of Contracts 2d, § 182 (1981).

██ The evidence did not establish that Potomac knew of or did anything in furtherance of the appellees' illegal purpose. Likewise, the illegality involved is clearly not a "flagrant violation of the fundamental rights of man or society." Section 41-4162 allows certain legal uses of automated telephones and Cato testified that the equipment she bought could perform legal functions. The only testimony offered to show Potomac even knew of the appellee's intended use was Cato's testimony that she thought Leads Unlimited's salesman was a Potomac employee. This is not sufficient to establish that Potomac, aside from simply leasing the equipment to the appellees, acted in furtherance of the appellees' intended illegal use so as to void the contract.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.