The Honorable Jerry E. Hinshaw State Representative Route 4, Box 444A Springdale, Arkansas 72764
Dear Representative Hinshaw:
This is in response to your request for an opinion regarding lease-purchases by cities in Arkansas. You attached to your correspondence a copy of Opinion No. 80-170, issued by this office on October 13, 1980, wherein reference was made to the fact that there is no statutory or case-law authority directly on point. You have asked whether there have been any changes in the statutes with respect to these lease-purchase arrangements.
The cases cited in that opinion have been neither repealed nor modified. Nor do we find any statutory authority offering guidance in this area. The statement in Opinion No. 80-170 in this regard therefore still stands, as does the conclusion that a final decision on the leases must remain with the courts.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[Attachment to 87-440)
Opinion No. 80-170
October 31, 1980
The Honorable Knox Nelson State Senator P. O. Box 5715 Pine Bluff, Arkansas 71601
The Honorable J. Gayle Windsor, Jr. State Representative 1040 Tower Building Little Rock, Arkansas 72201
Re: Lease Purchase Contracts by Counties and Municipalities
Gentlemen:
This is letter in response to the requests for opinions from each of you and from numerous prosecuting attorneys around the State regarding the validity of counties and municipalities entering into lease purchase agreements for equipment.
The pertinent provisions of most of the leases are described as follows:
 The lease is of personal property over a period of years. The lease contains a clause that allows the lessee to not renew the lease for any fiscal year in which funds are not appropriated to make the payments, and as a result of such failure to renew, the lessee incurs no further obligation. The cumulative annual payment due under the lease is payable from funds which will have been actually appropriated and actually available for such payment.
As part of the lease, the lessee is given an option to purchase the property at any time during the term of the lease. The option price is determined by taking the original price of the property to the lessor, and reducing that figure each month by the amount of the monthly payment which is calculated wherein the original purchase price is broken down into monthly payments equal in number to the number of months in the term of the lease and equal in amount to the total of (1) the number of months in the lease term divided into the total purchase price of the property, plus (2) interest calculated at a legal rate of interest.
Two principle [principal] questions have been raised concerning the constitutional validity of these leases.
1. Whether the leases violate Amendment 10 of the Arkansas Constitution which provides in pertinent part as follows: The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board of agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of aldermen, board of public affairs, or commissioners of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrants, scrip, or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, or any city of the first or second class or incorporated town sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year.
The question raised under the above portion of Amendment 10 is whether the term of the lease is a commitment of funds beyond the fiscal year in which the contract is executed.
2. Whether the leases are violative of Amendment 13 of the Arkansas Constitution which provides in pertinent part as follows:
 Neither the State nor any city, county, town or other municipality in this State, shall ever lend its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution in 1874, and the State shall never issue any interest bearing treasury warrants or scrip.
The question raised is whether under the above portion of Amendment 13 the leases constitute an interest bearing evidence of indebtedness.
In response to the first question there are numerous cases which have addressed the question of contracts which require the payment of amounts in excess of normal revenues. In Stanfield v. Friddle,185 Ark. 873, 50 S.W.2d 237, (1932) it is stated:
 The law may therefore be regarded as definitely settled that any contract entered into or allowance made in excess of the revenues of the year in which the contract was entered into, or the allowance made, is wholly void, and the issuance of county warrants based thereon adds nothing to their validity, as the warrants are also void.
Daily v. City of Little Rock, 227 Ark. 537, 299 S.W.2d 825 (1957) stated the concept as follows:
 Regardless of the nature of the transaction (contract of sale or lease with option to purchase) the burden was on (the one challenging the contract) to show that performance of the agreement would require an expenditure of revenues by the City in excess of those for the year in which the contract was made.
The implication to be drawn from this is that so long as the expenditures for the fiscal year in which the contract is made do not exceed the revenues that the contract does not violate Amendment 10.
In the contracts submitted to this office each provides that the city/county may not renew the contract for any period in which funds are not available and therefore expenditures would not exceed revenues. The contracts are divisible into periods covering each fiscal year or part thereof in which funds are available for payment. If funds are not available and the city/county does not renew there is no further obligation on the city/county and the leasing agent may only recover his property.
Therefore, the contracts do not violate Amendment 10.
The answer to question 2 above requires a definition of an interest bearing evidence of indebtedness and an application of Amendment 13 to the facts surrounding the lease.
Goodwin v. State, 235 Ark. 457, 360 S.W.2d 490 (1962), was a taxpayer's suit against the seller of certain items of road equipment to Garland County. The County Judge had executed contracts of sale and promissory notes on behalf of the County to pay moneys in the next fiscal year.
The trial court found the transaction to be void pursuant to Amendment 10. On appeal, the Supreme Court affirmed the trial court and going further stated:
 In addition to what we have already said we point out also that the contracts, which provided for interest on the unpaid balance, violate Amendment 13 of the Constitution.
No explanation was made nor precedent cited as authority for this dictum. Warren v. State, 232 Ark. 823, 340 S.W.2d 400 (1960) was a criminal case arising from the facts of the Goodwin case previously discussed. Warren was the county judge who executed the notes and contracts and criminal charges were brought under the penal provision of Amendment 10 of the Arkansas Constitution. That provision made it a criminal offense to issue scripts, warrants or other certificates of indebtedness in excess of the total revenues for the year.
The opinion states that:
 The amendment refers to certificates of indebtedness as being in the nature of interest bearing bonds. The contract in itself cannot be considered as a certificate of indebtedness.
Amendment 13 has been interpreted in a manner consistent with Amendment 20. That is, the prohibition against issuance of "interest-bearing evidences of indebtedness" does not apply to revenue obligations payable from a "special fund" (Austin v. Manning, 217 Ark. 538, 231 S.W.2d 101 (1950)) and governs only issuance of municipal bonds payable from property taxes (Boswell v. City of Russellville, 223 Ark. 284, 265 S.W.2d 533 (1954)).
The courts have held that contracts of this character did not create debts within the purview of constitutional or statutory prohibitions against incurring debts as the only recourse in the contract which the selling company has in the case of the failure to pay the purchase price is to retake the machinery. It is a contingent liability only, for which a general tax cannot be levied. Mississippi Valley Power Co. v. Board of Improvement Water Works District No. 1, 185 Ark. 76, 46 S.W.2d 32 (1932).
Applying the above logic if by the terms of the leases the lessor has no recourse upon failure to pay the monthly rental except to retake the leases goods; and the city/county is obligated only upon the contingency that revenue is available to pay the rental then only a contingent liability is created within the purview of constitutional or statutory prohibitions against incurring debts.
The meaning of the term, "evidence of indebtedness", is dependent upon the nature of the municipal obligation involved. A municipal "debt" generally is defined as an unconditional promise of the municipality to pay a sum now due or to become due in the future. 15 McQuillin on Municipal Corporations 41.18. A contract that is payable solely out of current revenues is not a "debt". 56 Am.Jur.2d Municipal Corporations 619. Moreover, the majority rule is that no "debt" is created if only a contingent future liability has been incurred. 15 McQuillin on Municipal Corporation 41.23.
As has previously been pointed out, the lease-product contract such as the one described herein is payable solely out of current revenues, the the obligation of the municipality to make payments in any future year is expressly conditioned upon the availability of funds to make payments.
In our opinion, there being no "debt" the interest-bearing prohibition of Amendment 13 is inapplicable.
Based upon the above statements it would appear that any lease/purchase agreement satisfying these requirements would pass a constitutional challenge.
It is our understanding that the leases described are particularly advantageous to cities and counties because they make available equipment at a cost much lower than would be available under a cash purchase. That advantage is directly attributable to the treatment given by the Internal Revenue Service to the interest income of the lessor. This opinion does not and is not intended to address any aspect of that treatment.
Further, this opinion recognizes that there is no statutory or case-law authority directly on point in this or any other jurisdiction. The final decision on the leases must remain with the courts.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Robert R. Ross.