David W. JACKS and Doris Jacks *v.*
WESTERN SECURED INVESTMENTS COMPANY
and Steven Miller

CA 00-995         .     43 S.W.3d 229

Court of Appeals of Arkansas
Division I
Opinion delivered May 9, 2001

*Charles Peden*, for appellants.

*Robert S. Coleman, Jr.*, for appellee Western Secured Investments Company.

*Grayson & Grayson, P.A.*, by: *Keith L. Grayson*, for appellee/intervenor Steven Miller.

S AM BIRD, Judge. This action stems from a contract for the sale of real and personal property. In October 1996, appellants David and Doris Jacks entered into a contract for the sale of commercial property with appellee/intervenor Steven Miller. Miller agreed to purchase real property for $250,000 and personal property for $15,000. The evidence suggests that Miller tendered $20,000 cash as a down payment. The $245,000 balance was to be financed with two promissory notes to the Jackses in the amounts of $70,000 and $175,000, both bearing interest at the rate of ten percent per annum. The notes were to be secured by two separate mortgages on the real property. Following the closing of the sale to Miller, the Jackses were to sell the $175,000 promissory note and corresponding mortgage to appellee Western Secured Investments Company for $134,000. The Jackses executed a commitment letter memorializing the sale of the note and setting forth the terms of the sale to Western. A closing date was scheduled for January 21, 1997, and all the necessary documents for the closing were prepared by an abstract company. Miller stood ready to close on the agreement by executing the promissory notes and corresponding mortgages, and Western stood ready to purchase the $175,000 note and mortgage. However, the Jackses refused to close.

Western filed a complaint contending that the Jackses had breached the contract by refusing to close the sale to Miller and, consequently, failing to sell the $175,000 promissory note and mortgage to Western. Western prayed for either specific performance or damages, and for its attorney's fees and costs. Miller intervened, alleging that he had paid the $20,000 cash down payment to

the Jackses, and seeking recission of the contract, judgment against the Jackses for his $20,000 cash down payment, and for his attorney's fees and costs. By way of an amended answer, the Jackses raised the affirmative defense that their contract of sale with Miller was void *ab initio* because it was an illegal contract. The Jackses specifically alleged that because Miller had pled guilty to federal charges of possession and conspiracy to distribute illegal drugs and conducting financial transactions with the intent to promote drug distribution, then anyone receiving money from Miller "very likely" would be the recipient of proceeds from the sale of drugs.

The court found that the Jackses had entered into a contract with Miller for the sale of the property, that the Jackses had breached that contract, and that Miller was entitled to rescission of the contract, the return of his $20,000 down payment, and attorney's fees and costs. The court also found that under the terms of the commitment letter signed by the Jackses, they had agreed to sell the $175,000 promissory note to Western for $134,000. The court concluded that the Jackses had breached their contract with Western by failing to close, thereby causing Western to lose profits of $77,134.47. The court also awarded attorney's fees and costs to Western.

■■ The Jackses' sole point on appeal is that the court abused its discretion in refusing to admit evidence of Miller's admitted criminal activity involving the sale of illegal drugs, stating that it was irrelevant. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401. This court will not reverse the court's decision to exclude evidence in the absence of an abuse of discretion. *Dooley v. Cecil Edwards Constr. Co.*, 13 Ark. App. 170, 681 S.W.2d 399 (1984).

The Jackses argue that because they had pled as an affirmative defense the illegality of the contract, they should have been entitled to present evidence in the form of a transcript of the 1999 testimony of Miller in United States District Court wherein Miller admitted: (1) that he was guilty of the charge of conspiracy to distribute cocaine; (2) that the majority of the money he made during 1994 through 1997 was from selling drugs; (3) that in 1997 he invested $130,000 from drug proceeds in a night club, which was later forfeited to the United States; (4) that dozens of individuals to whom he provided drugs also sold drugs; and (5) that he had

lost as much as $97,000 in illegal drug sales proceeds during a police raid in Chicago.

They contend that even though the terms and subject matter of their contract of sale with Miller are legal, because the money to be paid by Miller as consideration for the purchase was to be derived from illegal funds, the contract is void, and to enforce the contract would force the parties to commit an illegal act. They maintain that by closing the transaction, they would have violated Ark. Code Ann. § 5-42-204 (Repl. 1997) and committed a Class C felony.

Arkansas Code Annotated section 5-42-204 states:

> (a) A person commits the offense of criminal use of property and/or laundering criminal proceeds when he knowingly:
>
> (1) conducts, or attempts to conduct, a transaction involving criminal proceeds which were derived from any predicate criminal offense, or which were represented to be criminal proceeds from any predicate criminal offense, with the intent to:
>
> (A) Conceal the location, source, ownership, or control of the criminal proceeds.

Also, in support of their argument regarding illegality, the Jackses cite cases for the proposition that every contract made for or about any matter or thing that is prohibited and made unlawful by statute is a void contract. We find those cases distinguishable from the present one.

The Jackses rely on *Edwards v. Randle*, 63 Ark. 318, 38 S.W. 343 (1896), for the proposition that the illegal contract there involved was indivisible, meaning that the lawful and the unlawful parts of the contract cannot be separated so as to enforce the one and annul the other. However, in *Randle, supra*, the subject matter of the contract consisted, in part, of an agreement for the sale of the furnishings of a post office by the postmaster and, in part, an agreement by the postmaster to resign his position and recommend the purchaser of the furnishings as his successor, with the purchaser also to receive all the fees and emoluments of the postmaster position. Noting that a promise to secure the appointment of another as the postmaster is illegal, as against public policy, the court concluded that the lawful part of the contract (the sale of furnishings) was not divisible from the unlawful part (the attempt to fill a

vacancy in a public office through methods not permitted by the law).

The Jackses also rely on *Randle v. Interstate Grocer Co.*, 147 Ark. 402, 227 S.W. 760 (1921), that involved an attempt to enforce promissory notes given as consideration for the sale of securities in Arkansas by Interstate Grocer Company, a foreign corporation, where the sale had not been approved by the State Bank Commissioner prior to the sale, which sale was therefore illegal. Interstate sought to enforce the notes and uphold the judgment that had been granted in its favor by the trial court on the strength of cases holding that a foreign corporation's failure to comply with the statutory requirements for doing business in this state does not render its contracts void, but merely renders them unenforceable until there is compliance with the statutory requirements. The supreme court distinguished the cases upon which Interstate relied, noting that the statute requiring prior approval of the sale of securities by a foreign corporation expressly makes such sales unlawful, classifies such sales as a misdemeanor, and imposes penalties. Although in *Interstate, supra*, the promissory notes given by the purchaser of the securities were apparently lawful on their faces, the notes were unenforceable and the transaction was void because the notes were given as consideration for an unlawful transaction, the unapproved sale of securities by a foreign corporation.

Finally, the Jackses cite *Bourland v. First Nat'l Bank Bldg. Co.*, 152 Ark. 139, 149, 237 S.W. 681, 684 (1922), for the proposition "that if any part of the entire consideration for a promise or any part of an entire promise be illegal, whether by statute or by the Constitution or from consideration of public policy, the whole contract is void." In *Bourland*, the City of Fort Smith solicited bids from area banks for the interest rates that the banks would pay to the city for the deposit of the city's and its various improvement districts' funds. Several banks submitted bids. However, when the bids were opened, it was discovered that no provision had been made for the city to borrow money, which the city was required to do from time to time. Therefore, the mayor told the bidding banks that the city would have to consider loans and to obtain them from whatever bank was selected as the depository, that the city would borrow considerably more money than it would have on deposit, and that this was a consideration that would be expected from the depository. Each bank was asked to amend its bid to state what rate of interest it would charge to lend money to the city. After the amended bids were received from some of the banks, the city chose City National Bank as its depository because it offered a lower rate

of interest on funds to be borrowed by the city. The trial court held that while the action of the city in soliciting bids from the banks for the interest rate to be paid on deposits of the city's money is proper and legal, the city's action in soliciting bids from the banks for the interest rates to be charged to the city for loans ran afoul of Art. 16, § 1, of the Constitution. Inasmuch as the subject matter of the city's agreement with City National Bank involved the interest rate to be paid to the city for its deposits, which was lawful, and the interest rate to be charged to the city for its loans, which was illegal, the supreme court held that the entire contract, being indivisible, was void.

In *Randle, Interstate,* and *Bourland, supra,* the subject matters that formed the bases of the agreements were legal in part and illegal in part. In contrast, the subject matter of the contracts between the Jackses and Miller, and the Jackses and Western, involving the Jackses' sale of real and personal property, the purchase price for which was evidenced by Miller's promissory notes and secured by his mortgages, and the sale of the one of the notes and the related mortgage to Western, is entirely legal. And the transactions are not made illegal because Miller allegedly may subsequently pay portions of the installments on the promissory notes with funds that the Jackses suspect have been received from his illegal sale of drugs or other illegal activities.

Also we do not agree with the Jackses' argument that, by closing their legal contract to sell their property to Miller, they would be violating section 5-42-204. Their otherwise legal contract is not rendered illegal, and therefore void, merely because of their suspicion that the money Miller will use to pay the notes secured by a mortgage on the property may be derived by Miller, in whole or in part, from an illegal source. Section 5-42-204 makes it illegal to knowingly use the proceeds from criminal activity in a transaction with the intent to conceal the location, source, ownership, or control of those proceeds. The transaction involving the sale of the Jackses' property does not involve the use of any proceeds from criminal activity because neither the Jackses' building nor its contents are alleged to have been derived from criminal activities. Nor would the Jackses' transfer of the property to Miller have the effect of concealing its location, source, ownership, or control.

While it is true that Miller's payment of the mortgage notes with funds derived by him from an illegal source with the purpose to conceal the location, source, ownership, or control of those funds would render Miller criminally liable under Ark. Code Ann.

§ 5-42-204, the Jackses, who have committed no illegal act, may not raise Miller's illegal conduct as a defense to the enforcement against them of an otherwise legal contract. Just as the Jackses would not be precluded from enforcing the contract against Miller under the circumstance here existing, *Potomac Leasing Co. v. Vitality Centers, Inc.*, 290 Ark. 265, 718 S.W.2d 928 (1986), they cannot refuse to perform the contract because Miller's ability to pay the contract price may be derived from an illegal source.

■ In summary, the trial court's decision to exclude evidence of Miller's prior criminal activity as irrelevant is supportable on two bases. First, it is nothing more than speculation to assume that because Miller has engaged in criminal activity in the past, his source of funds to pay for the property will be derived from continued future criminal activity on his part. Secondly, and more importantly, the fact that Miller may derive funds from criminal activity to make payments of the mortgages that resulted from a legal contract for the sale of property is not a basis upon which the Jackses may rely to avoid their obligations under the contract.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.